**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

**PHOENIX DIVISION**

CLINTON STRANGE,

*Plaintiff*

v.

SP PROCESSING, LLC;

an Arizona Domestic Limited Liability Company

&

SUREN PRASAD,

individually as a Member of SP Processing, LLC

*Defendants*

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE    L R C w P S M
                        (Rule Number/Section)

**CV21-00101-PHX-SPL**

**CIVIL ACTION COMPLAINT**

**FOR VIOLATIONS OF:**

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

**THE FAIR DEBT COLLECTION PRACTICES ACT OF 1977**

**&**

**TORT DAMAGES UNDER LOUISIANA CIVIL CODE ARTICLE 2315**

**PURSUANT TO**

**THE LOUSIANA FAIR DEBT COLLECTION PRACTICES ACT OF 1972**

**Jury Trial Demanded**

## PRELIMINARY STATEMENTS:

1. The Plaintiff CLINTON STRANGE, appearing *pro se*, represents to the Court that this is a private enforcement action brought to recover damages against Defendants SP PROCESSING, LLC, an Arizona Domestic Limited Liability Company (SP Processing); and SUREN PRASAD individually as a Member of SP Processing, LLC (Prasad); herein and collectively (Defendants) for alleged violations of Louisiana Tort Statutes, the Telephone Consumer Protection Act of 1991 ("TCPA"), and the Fair Debt Collection Practices Act of 1977 (FDCPA) For sending autodialed debt collection text messages using an Automatic Telephone Dialing System ("ATDS").

2. The Plaintiff seeks a maximum award of damages and injunctive relief together along with post judgement interest and all costs and fees associated with bringing and litigating the action.

## JURISDICTION & VENUE:

3. **Jurisdiction** arises in this U.S. District Court under a Federal Question as the TCPA and the FDCPA are Federal Statutes pursuant to 28 U.S.C. § 1331.

4. **Supplemental Jurisdiction** would be properly applied relative to the Plaintiff's State Law claims as the claims arise out of the same misconduct alleged that primarily arises under Federal Questions pursuant to 28 U.S.C. § 1367.

5. **Venue** lies proper in this U.S. District because the Defendants can be found here by way of ownership, transactional activity, litigation, or alternatively maintain a registered agent in this U.S. District pursuant to 28 U.S.C. § 1391.

**THE PARTIES:**

6. **Plaintiff CLINTON STRANGE** is an adult individual and a "person" as that term is defined pursuant to 47 U.S.C. 153(39) residing at the address of:

CLINTON STRANGE

7021 WINBURN DRIVE

GREENWOOD, LA 71033

7. **Defendant SP PROCESSING, LLC** is an Arizona Domestic Limited Liability Company principally headquartered and maintains a Statutory Agent listed as:

US DOC ASSIST LLC

c/o: SP PROCESSING, LLC

3507 NORTH CENTRAL AVENUE

SUITE 403

PHOENIX, AZ 85012

8. **Defendant SUREN PRASAD** is named individually as a Member of SP Processing, LLC. According to documents obtained from the Arizona Corporations Commission and the California Department of Insurance Division this Defendant resides in and can be found in or around the following address:

SUREN PRASAD

3227 REED WAY

HUYWARD, CA 94541

**FACTUAL ALLEGATIONS:**

<u>The Historical Background Leading Up to the Current Action at Bar</u>

9. Between the fall of 2019 until about March 2020 the Plaintiff was receiving unwanted autodialed texts and calls from Direct Recovery Services, LLC regarding an alleged consumer debt ($332.50) owed by Margaret Hough, who was apparently the prior wireless

subscriber to the Plaintiff's cellphone number 318-780-8890. Plaintiff made a few demands by voice (during some calls back to text message numbers and phone calls) asking Direct Recovery Services, LLC to stop contacting the Plaintiff regarding Margaret Hough's alleged debt.

10. Plaintiff alleges that the down-line creditor (a Debt Buyer) Direct Recovery Services, LLC bundled Junk consumer debt into a binder and sold said binder of Junk Debt to SP Processing or an affiliated entity for pennies-on-the-dollar and that the Plaintiff's Do-Not-Call Demands were not passed along with the sale of the alleged consumer debt obligation portfolio.[1]

11. Plaintiff represents that he does not know Margaret Hough. Plaintiff further represents that although he owes debt derived from consumer products goods and services to some [other] creditors that he does not owe [these] Defendants or creditors any money.

<u>The Documented Autodialed Texts from SP Processing & Prasad</u>

12. After Direct Recovery Services, LLC (DRS) received the Plaintiff's several Do-Not-Call requests the Plaintiff alleges that (DRS) decided to abandon further attempts to collect the alleged consumer debt; then the consumer debt obligation was bundled into a portfolio of thousands of other consumer debt obligations and sold to Defendants on or around April 1, 2020 for pennies-on-the-dollar. Then after Defendants (named in *this* action) received the debt purchase agreement documents stating that they "owned" the *alleged* consumer debts they began to undertake steps to collect the debts in approximately May 2020.

---

1- Plaintiff believes that another creditor owned the debt previously and was placing autodialed calls before SP Processing started texting him. They are being sued in *Strange v. Direct Recovery Services, LLC* (D. Minn.).

13. On May 5, 2020 at 3:10pm CST the Plaintiff received an autodialed text message on his cellphone number 318-423-5057 from a long code number 412-356-8786 that was ported or allocated across the Telnyx, LLC VoIP Telecommunications Network. The Plaintiff represents that the below image labeled Figure A is a true and accurate representation of his cellphone's screen, herein ("screen-shot" or "screen-capture") in regard to the autodialed text message referenced herein:



**Figure A**

14. The Plaintiff represents that the Defendants' autodialed text message deallocated and or consumed at least 38 bytes of mobile data off his Verizon Wireless Monthly Mobile Data Plan which was at the time low on available data [as depicted below in Figure B]; save that Verizon Wireless decided to allocate additional data to consumers in good standing due to Covid-19, the Plaintiff would have suffered greater harm due to the loss of the Mobile Data usage deallocated by the Defendants' autodialed text message from May 5, 2020 [See Figure C].



**Figure B**

**Figure C**

15. On May 22, 2020 at 1:26pm CST the Defendants transmitted their second documented

autodialed text message to the Plaintiff's cellphone number 318-780-8890 from a long code

number appearing on the Plaintiff's Caller ID as 318-474-8052 that was ported to or

allocated across the Telnyx VoIP Network. The Plaintiff represents that the below image

labeled as Figure D is a true and accurate representation of the Plaintiff's cellphone's screen

in regard to the autodialed text message referenced herein.



5/22/20 1:26 PM

Hi Margaret Hough there is something I would like to discuss with you will you please call me?

Type a message...  

**Figure D**

16. The Plaintiff represents that the Defendants' autodialed text message was a generic pre-written template message sent to thousands (if-not-tens-of thousands) of consumers across the nation (however the Defendants' technology inserts debtor's name).

17. Plaintiff further represents that the Defendants have no commercial footprint within North Louisiana (where the above alleged autodialed text appeared to have originated from). They are also not licensed (registered) in Louisiana to collect debts.

18. The Defendants' text message also did not include a Mini – Miranda warning stating 'in effect' substantially " This is an attempt to collect a debt….etc."

19. Plaintiff represents that the May 22, 2020 text message consumed or deallocated at least 94 bytes of Mobile Data off Plaintiff's Verizon Wireless Mobile Data Plan; also it consumed at least that much valuable disk space on Plaintiff's LG Phone's memory chip as depicted in the below images labeled Figures E and F.

 

**Figure E**                    **Figure F**

20. On June 18, 2020 at 9:08 am CST the Defendants' Autodialer Platform Technology
transmitted 2 Autodialed text messages to the Plaintiff's cellphone number 318-780-8890
from a long code number appearing on the Plaintiff's cellphone's Caller ID as 310-359-0235
that transmitted the exact same pre-written template text message sent about 2 minutes apart.
The Plaintiff represents that the below image labeled Figure G is a true and accurate
representation of his cellphone's screen in regard to the autodialed text messages referenced
herein. Plaintiff represents to the Court that the transmission of the two duplicate messages
sent 2 minutes apart proves that the messages were sent via an ATDS.[2]

---

2- Still pending is the decision of the Supreme Court in *Facebook, Inc. v. Duguid*, No. 19-511, wherein
the court granted certiorari to resolve, "Whether the definition of ATDS in the TCPA encompasses any
device that can `store' and `automatically dial' telephone numbers, even if the device does not `us[e] a
random or sequential number generator." See *Palmer v. KCI USA, Inc.* No. 4:19-CV-3084-MDN (Maj.
Judge Nelson, M.) (D. Neb.) (Nov. 3, 2020).



**Figure G**

21. The Plaintiff represents that the Defendants' (two above) autodialed text messages deallocated and or consumed in aggregate over 180 bytes of disk space on his cellphone and consumed and or deallocated 180 bytes of mobile data off his Verizon Wireless Plan.



**Figure H**



**Figure I**

22. On July 24, 2020 at 7:32pm CST as shown in below Figure J Defendants sent Plaintiff

another autodialed text message on his cellphone number 318-780-8890 this time being

sneaky and acting like they were UPS (United Parcel Service or U.S.P.S. (United States

Postal Service). This constitutes an Unfair Trade Practice under many State Laws, and also in

an Unfair Debt Collection Practice and or technique. Plaintiff is not alone in his victimization

of this specific misconduct as he represents that Defendants are facing similar allegations in

another case.[3]





Hello Margaret Hough this is SPS reaching out about a
package we have to deliver, is this the right phone number?

 

**Figure J**

---

3- Defendant is alleged to have been pretending to "have a package" for a consumer debtor in
Massachusetts claiming to be SPS trying to trick the debtor into calling Defendants. See
*Ostroff v. SP Processing, LLC et al.*, No. 4:20-cv-40139-TSH DE *1 (D. Mass.) (Nov. 11,
2020).

23. The Plaintiff represents that the Defendants autodialed debt collection text message sent on July 24, 2020 deallocated and or consumed in aggregate over 113 bytes of disk space on his cellphone and consumed and or deallocated 113 bytes of mobile data off his Verizon Wireless Plan as represented in the below figure K.



**Figure K**

24. On July 31, 2020 at 11:15am CST the Defendants' ATDS transmitted the last of their annoying and intrusive debt collection robotexts to the Plaintiff's cellphone number 318-780-8890 from Franklin County, Washington (based on the area code used). The long code number appearing in the Caller ID (of the text message screen) was 509-416-0114 as depicted below in Figure L. Figure M below is representative of a reverse area code and exchange (phone number) search engine called area-codes.com.





Hello Margaret Hough this is SPS reaching out about a
package we have to deliver, is this the right phone number?



8/1/20 12:20 AM

Type a message...

**Figure L**



**Figure M**

25. Plaintiff represents that Defendants' July 31, 2020 autodialed text message also took up 113 bytes of mobile data and disk space (as depicted in below Figure N) as did the July 24, 2020 text message because they were exactly the same pre-written template of texts (with Margaret Hough inserted by the Defendants' technology platform) which further shows that an ATDS platform was being used to send the annoying text messages.



**Figure N**

### The Plaintiff's Efforts to Mitigate Damages and Harm

26. Plaintiff's cellphone number 318-780-8890 was registered on April 4, 2019 (within hours of activating the Verizon account) on both the Federal Trade Commission's Do-Not-Call list and the Louisiana Public Service Commission's Do Not Call Program Registry.

27. Plaintiff repeatedly called the numbers (in the text message Long-Code Caller ID) and asked not to be called and stated that he was not Margaret Hough.

### Principal Liability

28. Us Doc Assist, LLC, according to the Arizona Secretary of State registry, is an active Arizona Domestic LLC, upon information and belief, is the parent company of Defendant SP Processing, LLC, and operating as the "registered agent" and manager for at least 40 different domestic Arizona companies, each of which lists its address c/o Us Doc Assist, LLC, at 3507 N. Central Avenue, Suite 403, Phoenix, Arizona.

29. Defendant, Suren Prasad is the principal member of both corporate defendants and lists his (assuming Male gender) address as 23227 Reed Way, Hayward, California. Upon information and belief, Defendant Suren Prasad is the principal member of all the companies under Us Doc Assist, LLC's umbrella of related ventures.

30. Upon information and belief, Defendants' principal business purpose is the collection of debts, Defendants regularly engage in aggressive debt collection practices on a nationwide basis in the recovery of alleged overdue consumer payment obligations alleged to be due to another.

31. 15 U.S.C. §1692 *et seq*. is the Federal Fair Debt Collection Practices Act of 1977.

32. Defendants are "Debt Collectors" as defined by 15 U.S.C. §1692a(6).

33. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, representatives and insurers at all times relevant to the instant action; all companies where Us Doc Assist, LLC is listed as the

relevant to the instant action; all companies where Us Doc Assist, LLC is listed as the registered agent for the company, are registered and licensed as having the exact same physical address, including suite number, as Us Doc Assist, LLC.

34. Defendant Suren Prasad is the managing member of each of the Us Doc Assist, LLC entities, including Defendants SP Processing, LLC and Us Doc Assist, LLC and upon information and belief, formed each entity as an alter ego for himself.

35. Upon information and belief, Defendants' actions are part of a scheme to hide their illegal activities in their relentless pursuit in trying to collect a debt or to obtain personal information about non-party Margaret Hough.

36. Defendants' actions, regardless of intent, were abusive, harassing, deceptive, unfair, misleading, harmful and inappropriate such that, Plaintiff has suffered concrete harm as a result of Defendants' actions including, but not limited to, undue stress, confusion and aggravation.

37. Defendants' abusive, harassing, misleading and deceptive conduct materially impacted and shaped Plaintiff's reactions and course of conduct in response to Defendants' collection efforts.

38. Plaintiff has suffered actual financial loss, including expending costs and assets in dealing with Defendants' conduct.

39. Plaintiff has further been unnecessarily confused and concerned given Defendants' violations of law, and have further suffered a violation of [h]is state and federally protected substantive interests as a result of Defendants' conduct.

40. Because of the connectivity of the Defendants and the overt scheme to shield each other from any liability for the activities, the Defendants are joint and severally liable for all damages

incurred by Plaintiff.

## THE COUNTS

### (As to all Defendants):

### COUNT I:

### Collection Agency Act (Washington's counterpart to the FDCPA)
### RCW 19.86.090

41. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

42. To prevail on a CPA claim, Plaintiff must establish the following elements: (1) unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986). "When a violation of debt collection regulations occurs," including violations of the FDCPA or the Collection Agency Act (Washington's "counterpart to the FDCPA"), such a violation "constitutes a per se violation of the CPA . . . under state . . . law." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53-54, 204 P.3d 885 (2009) (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174 (11th Cir. 1985) and *Evergreen Collectors v. Holt*, 60 Wn.App. 151, 155, 803 P.2d 10 (1991)).

43. The Ninth Circuit concluded that "[t]o the extent an FDCPA violation may serve as the basis of a per se CPA claim . . ., then an FDCPA violation per se satisfies" the first three elements of the *Hangman Ridge* test, including "the `trade or commerce' element, along with the `unfair or deceptive' and `public interest' elements, of the CPA." Memorandum Disposition (docket no. 51 at 5 n.3). It further concluded that "[t]aking the well-plead factual allegations

of the complaint as true, . . . the Defendants' attempts to collect debts with false affidavits and the necessary documentation to prove their claims plausibly alleged the use of `unfair or unconscionable means to collect or attempt to collect any debt'" under 15 U.S.C. § 1692f.

44. Plaintiff plausibly alleges injury to his businesses or property. *see* RCW 19.86.090 (providing that "[a]ny person who is injured in his or her business or property by a violation of [the CPA] . . . may bring a civil action").

45. Plaintiff seeks up to $1,000.00 in damages per violation against Defendants jointly and severally because the last call (text) was misleading as defined by the FDCPA and an unfair trade practice under Washington statutes, and because the call originated from Franklin County, Washington.

## COUNT II:
## Fair Debt Collection Practices Act
## 15 U.S.C. §1692 *et seq.*

46. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

47. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

48. Defendants are each a "debt collector" as defined by §1692a(6) of the FDCPA, because they regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent accounts, including consumer accounts and regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

49. Defendants, as part of their regular business, engage in the collection or attempt to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others, and debt collection is a primary aspect of their business.

50. The subject debt ($332.50) is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

51. The process used by the Defendants in their relentless sending of deceptive text messages to Plaintiff is a prohibited, harassing, false and misleading, deceptive and unfair practice in violation of 15 U.S.C. §§ 1692b(1) and (3), 1692d(6), 1692e(10),(11) and (14), 1692f(1) and §1692g.

52. As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual and statutory damages pursuant to 15 U.S.C. § 1692k(a)(1), 2(A), and in amount to be determined at trial by jury: and reasonable attorney's fees (if any) and costs pursuant to 15 U.S.C. § 1692k(a)(3) from *each* Defendant.

## COUNT III:
### The Telephone Consumer Practices Act of 1991
### 47 U.S. Code § 227(b)

53. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

54. Plaintiff represents that each text message was sent using an ATDS.

55. Defendant transmitted (meaning placed or initiated without human contact intervention) a total of six (6) text messages to the Plaintiff's cellphone.

56. The Plaintiff seeks $500.00 to $1,500.00 in damages for each and every one of Defendants' illegal debt collection campaign text messages at the discretion of the Court or alternatively the trier of fact.

## COUNT IV:

## TORT DAMAGES UNDER LOUISIANA CIVIL CODE ARTICLE 2315
## PURSUANT TO THE LOUISIANA FAIR DEBT COLLECTION STATUTE

57. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

58. Defendants' actions constituted an Unfair Trade Practice under Louisiana Law. The texts were directed toward a 318-area code number which comprises the North ½ of the state of Louisiana. Defendant availed themselves of the Laws of Louisiana when they directed their misconduct into the State.

59. Defendants' misconduct also violated the Louisiana Debt Collection Act at Louisiana Rev. Stat. 9: §3562 in the "Unauthorized collection practices" section which states " Except as otherwise provided by law or this section, the creditor, including, but not limited to the creditor in a consumer credit transaction, shall not contact any person other than an extender of credit or credit reporting agency who is not living, residing, or present in the household of the debtor regarding the debtor's obligation to pay a debt."

60. Louisiana Rev. Stat. 9: §3562 (5) states "This section shall not limit a debtor's right to bring an action for damages provided by Article 2315 of the Louisiana Civil Code.", which gives Plaintiff a private right of action to bring suit against the Defendants under Louisiana Civil Code Article 2315.

61. Louisiana Civil Code Article 2315(A) simply states "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

62. Under Louisiana statutes and civil codes tort damages are assessed by the judge or jury. While Plaintiff asserts that $6,000.00 would be an appropriate remedy; Louisiana's Civil Code section regarding claims like this one are addressed at Louisiana Civil Code 2324.1

which states "In the assessment of damages in cases of offenses, quasi offenses, and quasi

contracts, much discretion must be left to the judge or jury."

## PRAYER FOR RELIEF:

**Wherefore,** the Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants

in the form of the following requested relief:

Statutory Damages;

Actual Damages;

Stacked Damages;

Treble Damages;

Enjoinder from future violations;

Pre and or Post Judgment Interest on Judgment;

Costs and fees (including attorney's fees if any);

And such other and further relief the Court deems necessary, just and proper.


Respectfully Submitted,

X _Clinton Strange_____          _1-14-2021_____
Clinton Strange                                      Dated
Pro Se
7021 Winburn Drive
Greenwood, LA 71033
(318) 780-8890
StrangeC982@gmail.com